……UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ADOLFO CORDERO,

    Plaintiff,

v.

FNU RICKNAUER,

    Defendants.

Civ. No. 13-2023 (RBK) (AMD)

**OPINION**

**ROBERT B. KUGLER, U.S.D.J.**

## I.    INTRODUCTION

Plaintiff is a federal prisoner who is currently incarcerated at Giles W. Dalby Correctional Facility in Post, Texas. Plaintiff was previously incarcerated at F.C.I. Fort Dix, in Fort Dix, New Jersey. He is proceeding *pro se* with a civil rights complaint filed pursuant to *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).[1] Presently pending before the Court are defendants', Robert Whritenour[2] and the Special Investigation Section of F.C.I. Fort Dix ("SIS"), motion to dismiss, or in the alternative, for summary judgment. For the following reasons, the motion will be granted in part and denied in part.

## II.    LEGAL STANDARD ON MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) AND MOTION FOR SUMMAR JUDGMENT

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss an action for failure to state a claim upon which relief may be granted. In evaluating a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the

---

[1] *Bivens* is the federal counterpart to 42 U.S.C. § 1983. *See Walker v. Zenk*, 323 F. App'x 144, 145 n.1 (3d Cir. 2009) (per curiam) (citing *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)).

[2] The complaint improperly names this defendant as FNU Ricknauer. The Court will use the correct spelling of this defendant's name in this Opinion.

plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In making this determination at the motion to dismiss stage, a court must take three steps. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1947). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (citing *Iqbal*, 129 S. Ct. at 1950). "Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . .

the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson*, 477 U.S. at 248; *see also* FED. R. CIV. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006) ("To prevail on a motion for summary judgment, the nonmoving party needs to show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial.")

### III.   BACKGROUND

Plaintiff was incarcerated at F.C.I. Fort Dix in September 2010 when the circumstances giving rise to this complaint occurred. At that time, inmates of Mexican heritage, who were gang "shot callers" or "Paisas," were assigned to plaintiff's prison unit. These "Paisas" began to dominate the microwaves and televisions on the unit and threatened plaintiff and other inmates of Cuban heritage. Plaintiff and another inmate warned Unit Manager Whritenour about the threats to bodily harm they were receiving from the "Paisas" on September 1, 2010. Whritenour told plaintiff that he would bring the matter to the attention of the SIS. On September 14, 2010, plaintiff gave Whritenour a note containing a list of names of the inmates who were threatening him. On September 28, 2010, plaintiff and another inmate again complained to Whritenour

about the threats they were receiving. Whritenour again stated to plaintiff and the other inmate that he would take the matter to the SIS.

On September 30, 2010, plaintiff was attacked by the "Paisas." The attack included being struck with make shift improvised weapons as well as being pushed down a flight of stairs. A unit officer eventually stopped the attack and plaintiff was transferred to the hospital. Plaintiff was diagnosed with CI multiple fractures and placed in a cervical spine stabilizing halo brace for three months. Doctors have told plaintiff that he will probably continue to experience moderate to severe thoracic spine pain for the rest of his life and possibly arthritis of the thoracic spine as a result of the injuries he suffered.

The prison received plaintiff's administrative remedy request on January 17, 2012. In that administrative remedy request, plaintiff indicated that he told his Unit Manager that the "Paisas" were taking over the unit in the prison. Plaintiff continued in this request by stating the following:

> But rather than actively pursuing a remedy to remove that complained of threat to the peace and security of Unit 5751. [sic] Instead that Unit Manager merely paid lip service to the matter and let it take its destructive course. Unfortunately, that destructive course nearly took Cordero's life. It is an old pattern for prison officials to solicit information from inmates in order to become aware of volatile situations and diffuse them before they get out of hand. Most of the time these early warnings save the lives of both staff and innocent inmates, with respect to noninvolvement in the matter. As a direct result of the Fort Dix institution Unit Manager not protecting Cordero in no way after being warned by him on more than three times Cordero thereby nearly lost his life.

(Dkt. No. 16-1 at p. 4.) Plaintiff requested to be released from prison and for the Bureau of Prisons ("BOP") to compensate him $5,000,000 for the injuries he suffered. Plaintiff's request for administrative remedy was denied. Plaintiff made similar allegations in appealing this denial

4

to the Regional Administrative Office and the Central Office. Both appeals were denied on April 10, 2012 and September 11, 2012, respectively.

On March 20, 2013, plaintiff filed his complaint in this Court.[3] The complaint requested $5 million in monetary damages due to defendants' failure to protect plaintiff. The Court then screened the complaint and permitted plaintiff's claims to proceed against Whritenour and SIS.[4] Whritenour and SIS then filed their motion to dismiss or in the alternative for summary judgment.

## IV.    DISCUSSION

Defendants' motion to dismiss/summary judgment raises three points. First, defendants argue they are entitled to summary judgment because plaintiff has not exhausted his administrative remedies. Second, defendants assert that the complaint should be dismissed as it is time-barred as it was filed after the applicable statute of limitations expired. Finally, defendants argue under the motion to dismiss standard that SIS should be dismissed as a defendant because it is not a "person" amenable to suit under *Bivens*. Before analyzing the merits of this motion, the Court must address some procedural matters that are also pending before the Court.

---

[3] Pursuant to the prisoner "mailbox rule," a prisoner plaintiff's court filing is deemed filed on the date he delivered it to prison officials for mailing. *See Houston v. Lack*, 487 266, 270-71 (1988). When a court is unable to determine the exact date that a prisoner handed his filing to a prison official for mailing, it will look to the date the document is signed by the prisoner plaintiff. *See Maples v. Warren*, No. 12-0993, 2012 WL 1344828, at *1 n.2 (D.N.J. Apr. 16, 2012) ("Often times, when the court is unable to determine the exact date that a petitioner handed his petition to prison officials for mailing, it will look to the signed and dated certification of the petition.") In this case, the complaint is dated March 20, 2013.

[4] The Court did not permit plaintiff's claims to proceed against the BOP as a prisoner may not bring a *Bivens* claim against the BOP. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001).

A. <u>Procedural Motions</u>

Defendants filed their motion for summary judgment on December 23, 2013. Plaintiff then submitted a handwritten two-page response to the motion which the Court received on January 21, 2014. (*See* Dkt. No. 12.) On January 27, 2014, the Court received plaintiff's request for an extension of time to file a response to defendants' motion. (*See* Dkt. No. 13.) In that motion, plaintiff indicated that due to his placement in the Special Housing Unit and the continued pain he was suffering from his injuries, he would need additional time to file a response in opposition to defendants' motion. Thereafter, plaintiff filed what appear to be identical responses in opposition to defendants' motion, which the Court received on January 27, 2014 and February 18, 2014, respectively. (*See* Dkt. Nos. 14 & 15.) On April 11, 2014, the Court received plaintiff's motion to withdraw his two-page handwritten January 21, 2014 response as he indicated that he had not had adequate access to the prison's paralegal specialist before filing that short initial response. (*See* Dkt. No. 19.) He indicated that he sought to withdraw that response and have the Court consider his January 27, 2014 (Dkt. No. 14.) as his response in opposition to the motion.

Good cause appearing, the Court will grant plaintiff's motion for an extension of time to file an answer and his January 27, 2014 response will be considered timely. Furthermore, the Court will grant plaintiff's motion to withdraw his January 21, 2014 letter as his formal response in opposition to defendants' motion to dismiss/summary judgment and consider his January 27, 2014 response as his actual response in opposition to defendant's motion. The Court notes that defendants filed their reply brief in support of this motion after plaintiff had filed his January 27, 2014 response in opposition. That reply brief addressed the issues raised not only in plaintiff's January 21, 2014 response, but also in his January 27, 2014 response.

Plaintiff has also filed a motion for sanctions, or in the alternative, to have the Court strike defendants' reply in support of their motion to dismiss/summary judgment. In this motion, plaintiff alleges that defendants have misled the Court in their reply brief. According to plaintiff, the defendants mislead the Court when they attached to their original motion an affidavit from Tara Moran, a legal assistant with the BOP, that stated that plaintiff had never filed an administrative remedy, and yet in the reply, defendants attached another affidavit from Moran that included an administrative remedy request and accompanying appeals that plaintiff had filed.

Plaintiff's motion for sanctions and/or motion to strike the reply will be denied. As defendants note in their response to the motion for sanctions, plaintiff has conflated the concept of filing an administrative remedy with filing an administrative remedy that raises a specific claim pled in a court complaint. Indeed, Moran stated in her original affidavit that "Plaintiff has never filed an administrative remedy regarding the defendant's failure to protect him from the assault the [sic] occurred at FCI Fort Dix." (Dkt. No. 12-2 at p. 2.) As discussed *infra*, it is defendants' position that plaintiff's request for administrative remedy and accompanying appeals (which defendants attach to their reply) do not allege a failure to protect claim from a legal standpoint. Thus, the original motion to dismiss/summary judgment and the reply are not inconsistent with each other. Accordingly, plaintiff's motion for sanctions and motion to strike will be denied.

B. <u>Defendants Motion to Dismiss/Motion for Summary Judgment</u>

Defendants argue that their motion should be granted because plaintiff failed to exhaust his administrative remedies and/or his complaint is untimely. Additionally, SIS argues that it

7

should be dismissed as a defendant in this action because it is not a "person" subject to a *Bivens* action. Each of these arguments is considered in turn.

      i.     *Exhaustion*

Defendants first argue that they are entitled to summary judgment because plaintiff has failed to exhaust his administrative remedies on his failure to protect claim. The Prison Litigation Reform Act ("PLRA") states: "[n]o action shall be brought with respect to prison conditions under the section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is a mandatory prerequisite before a plaintiff files a civil rights action regarding prison conditions. *See Woodford v . Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes[.]" *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). A prisoner must exhaust administrative remedies even when the relief sought, such as monetary damages, cannot be granted by the administrative process. *See Woodford*, 548 U.S. at 85 (citing *Booth*, 532 U.S. at 734).

To determine whether a prisoner has exhausted his administrative remedies, the Court looks to the administration's, in this case the BOP's, applicable grievance procedure and rules. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) (stating that the procedural rules for exhausting administrative remedies are defined by the prison grievance process itself and that "[c]ompliance with the prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust"). The BOP's Administrative Remedy Program is a multi-tier process that allows "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28

C.F.R. § 542.10.  The inmate first must attempt to informally resolve his issue with the institutional staff.  *See id.* § 542.13(a).  If informal resolution fails or is waived, the inmate then may submit a formal Administrative Remedy Request on the appropriate BP-9 form within twenty calendar days following the date for which the basis for the request occurred.  *See id.* § 542.14(a).  If the inmate is unsatisfied with the warden's response to his Administrative Remedy Request, he may submit an appeal on the BP-10 form to the appropriate Regional Director within twenty calendar days of the date the warden signed the response.  *See id.* § 542.15(a).  An inmate who is not satisfied with the Regional Director's response may appeal to the General Counsel on the appropriate BP-11 form within thirty calendar days of the date the Regional Director signed the response.  *See id.*  An inmate's appeal to the General Counsel is the final administrative appeal.  *See id.*

"[W]hether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures."  *See Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010).  The Supreme Court has stated that, "[t]he level of detail necessary in a grievance system to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones*, 549 U.S. at 218.

The BOP's Administrative Remedy Procedure, 28 C.F.R. § 542.10 *et seq.* and its Program Statement 1330.13, *available at* http://www.bop.gov/policy/progstate/1330_18.pdf (last visited Sept. 12, 2014), do not provide meaningful guidance as to the level of specificity required in an administrative remedy request except to note that "[t]he inmate shall place a single complaint or a reasonable number of closely related issues on the [administrative remedy] form."  28 C.F.R. § 542.14(c)(2).  The Third Circuit has not addressed the issue of the level of specificity

9

required, however, it has noted that "[t]he primary purpose of a grievance is to alert prison officials to a problem." *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007).  This language has led this and at least one other Court in this District to adopt the standard adopted by some other Circuit Courts "that a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."  *See Olivares v. United States*, No. 07-3476, 2010 WL 5251429, at *4 (D.N.J. Dec. 16, 2010) (citing *Griffin v. Arpaio*, 557 F.3d 1117 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002))); *see also Perez v. Turner*, No. 11-6833, 2013 WL 3216147, at *7 (D.N.J. June 25, 2013); *Nestor v. Dir. Ne. Region Bureau of Prisons*, No. 11-4683, 2012 WL 6691791, at *8 (D.N.J. Dec. 20, 2012).  The Court sees no reason to reject this methodology and defendants cite to no binding precedent that that requires a heightened specificity standard.  Accordingly, the Court will analyze whether plaintiff's administrative remedy request provided the BOP with sufficient notice of the nature of the wrong for which plaintiff now seeks relief in this *Bivens* complaint.

     As detailed in *supra* Part III, plaintiff's administrative remedy request explained that plaintiff complained of threats the unit was facing from the "Paisas."  Furthermore, he stated that despite his statements and requests to the Unit Manager three times with respect to the threats that the "Paisas" posed, plaintiff almost lost his life and lost his good health.  (*See* Dkt. No. 16-1 at p. 4.).  Plaintiff's appeals to the Regional Director and the Central Office also indicated that plaintiff told his Unit Manager about the threats posed by the "Paisas," but nothing was done and he was ultimately attacked by them.  Based on these allegations, the BOP should have been on notice that plaintiff was asserting a failure to protect claim.  *Accord Perez*, 2013 WL 3216147, at *7 (finding that while plaintiff did not mention Eighth Amendment or *Bivens* in his administrative remedy request, plaintiff's description of his ailments, his disagreement about the

10

quality and effectiveness of the care he was receiving and questioning the defendants professional qualifications was enough to put the BOP on notice of the nature of the wrong that formed plaintiff's medical treatment claim); *Nestor*, 2012 WL 6691791, at *8 (finding that plaintiff's statement that due to his rape and assault his Eight Amendment rights were violated (subjection to cruel and unusual punishment) could be reasonably construed as stating a claim that the officials were deliberately indifferent by failing to protect plaintiff such that the BOP should have been on notice of the problem the BOP had in keeping plaintiff protected from violent attacks by other prisoners).

Defendants' citation to *Thrower v. United States*, 528 F. App'x 108 (3d Cir. 2013) (per curiam) in their brief does not change this outcome as that case is distinguishable. In *Thrower*, the plaintiff was pursuing a *Bivens* claim that that officers at a federal prison failed to protect him by placing him in a cell with a dangerous inmate. *See id.* at 110. Ultimately, the Third Circuit determined that the District Court had properly dismissed this claim for failure to exhaust because the "record reflect[ed] that none of Thrower's administrative grievances [had] alleged that staff failed to protect him by placing him with a dangerous cellmate." *Id.* Unlike *Thrower*, plaintiff in this case detailed in his administrative remedy request that he let his Unit Manager know of the threat posed by the "Paisas," yet nothing was done about it. Furthermore, plaintiff indicated that he was ultimately assaulted by the "Paisas."

Defendants also argue that plaintiff failed to exhaust his administrative remedies because his administrative remedy request was untimely. Defendants note that the assault occurred on September 30 2010, yet plaintiff did not file his administrative remedy request until fifteen months later, well beyond the twenty days set forth in 28 C.F.R. § 542.14(a). However, neither plaintiff's administrative remedy request, nor his appeals to the Regional Director and the

11

Central Office were denied as untimely. Accordingly, the exhaustion requirement of the PLRA was satisfied as plaintiff's administrative remedy request was decided on the merits. *See Spada v. Martinez*, No. 13-4205, 2014 WL 4056924, at *3 (3d Cir. Aug. 18, 2014) ("'[T]he exhaustion requirement of the PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority.'") (quoting *Hill v. Curcione*, 657 F.3d 116, 225 (2d Cir. 2011)) (citing *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000)). Therefore, for these reasons, the Court finds that plaintiff exhausted his administrative remedies.

      ii.      *Statute of Limitations*

Defendants next argue that the complaint should be dismissed as it was filed after the applicable statute of limitations expired. Plaintiff asserts that his complaint is timely as the statute of limitations should be equitably tolled during the time that he was exhausting his administrative remedies.

The statute of limitations for a *Bivens* claim is taken from the forum state's personal injury statute. *See Hughes v. Knieblher*, 341 F. App'x 749, 752 (3d Cir. 2009) (per curiam) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993); *Napier v. Thirty or More Unidentified Fed. Agents, Employees or Officers*, 855 F.2d 1080, 1087 n.3 (3d Cir. 1988)). New Jersey's statute of limitations for personal injury actions is two years. *See* N.J. STAT. ANN. § 2A:14-2. "While state law provides the applicable statute of limitations, federal law controls when a *Bivens* claim accrues." *Peguero v. Meyer*, 520 F. App'x 58, 60 (3d Cir. 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a *Bivens* claims accrues when the plaintiff knows of or has reason to know of the injury. *See Hughes*, 341 F. App'x at 752 (citing *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)).

In this case, plaintiff knew or had reason to know of his injury on September 30, 2010, when he was attacked by the "Paisas." However, he did not file his complaint until March 20, 2013, or more than two years after his failure to protect claim accrued.

Plaintiff claims that his complaint should be considered timely as the two-year statute of limitations should be equitably tolled during the time he was exhausting his administrative remedies. As previously noted, the prison received his administrative remedy request on January 17, 2012, or 474 days after September 30, 2010, the day of the attack on plaintiff by the "Paisas." The Central Office denied his administrative remedy appeal on September 11, 2012. Plaintiff then filed his complaint on March 20, 2013, or 190 days thereafter. Thus, if the period from January 17, 2012 until September 11, 2012 is equitably tolled, plaintiff's complaint will be considered timely as less than two years would have run (474 days + 190 days = 664 days).

Defendants admit in their reply brief that "[b]ecause exhaustion of administrative remedies is mandatory under the PLRA, the statute of limitations may be tolled while a prisoner exhausts." Indeed, while it does not appear that the Third Circuit has held in a precedential opinion that the statute of limitations is tolled while a plaintiff prisoner exhausts his administrative remedies under the PLRA, it has noted that "several courts of appeals have held that, because exhaustion of prison administrative remedies is mandatory under the Prison Litigation Reform Act ("PLRA"), the statute of limitations applicable to § 1983 actions should be tolled while a prisoner exhausts." *Pressley v. C.O.I. Huber*, 562 F. App'x 67, 70 (3d Cir. 2014) (per curiam) (citing *Gonzalez v. Hasty*, 651 F.3d 318, 323-24 (2d Cir. 2011); *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005); *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002); *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001); *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000)). While the Third Circuit may not have held that the period a prisoner takes

13

to exhaust his administrative remedies tolls the statute of limitations, other non-precedential Third Circuit decisions appear to indicate that tolling is appropriate. *See Flowers v. Phelps*, 514 F. App'x 100, 101 n.1 (3d Cir. 2013) (per curiam) ("We also agree that because exhaustion of prison administrative remedies is mandatory under the . . . PLRA, the statute of limitations applicable to § 1983 actions may be tolled while a prisoner exhausts.") (citations omitted); *Paluch v. Sec. Pa. Dep't Corr.*, 442 F. App'x 690, 694 (3d Cir. 2011) (per curiam) (same) (citations omitted). This Court has also similarly noted that a prisoner plaintiff's statute of limitations on his *Bivens* complaint is most likely tolled while he exhausts his administrative remedies. *See Raines v. Lappin*, No. 11-5681, 2013 WL 3283930, at *6 (D.N.J. June 26, 2013) ("Plaintiff is probably correct that the limitations period on a *Bivens* claim should be tolled while a prisoner engages in the administrative remedy process.") (citing *Shakuur v. Costello*, 230 F. App'x 199, 201 (3d Cir. 2007) (per curiam)).

In light of the guidance from the Third Circuit in its non-precedential opinions, and in light of the fact that a prisoner plaintiff needs to exhaust his administrative remedies before bringing suit, the Court finds that equitable tolling applies while plaintiff exhausted his administrative remedies from January 17, 2012 until September 11, 2012. Therefore, plaintiff's complaint will be deemed to have been filed within the applicable two-year statute of limitations as the period between January 17, 2012 and September 11, 2012 will not count towards the two-year limitations period.

Perhaps recognizing the applicability of equitable tolling to this case, defendants nevertheless argue that plaintiff's complaint is not timely because he did not file any administrative remedies that Unit Manager Whritenour failed to protect him. This is in effect a re-argument of defendants' failure to exhaust argument. As stated in *supra* Part IV.B.i, however,

plaintiff exhausted his administrative remedies with respect to his failure to protect claim. Therefore, he is entitled to equitable tolling during the period of his administrative remedy request and appeals. As plaintiff is entitled to equitable tolling during this period, thereby making his complaint timely, the Court need not consider plaintiff's alternative argument that his complaint is timely under a continuing injury theory.

      iii.    *SIS as a defendant*

Finally, defendant SIS argues that it should be dismissed as a defendant because it is not a "person" amenable to suit under *Bivens*. In order to state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation of the right was caused by a person acting under color of state law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006) (stating that under Section 1983 "an individual may bring suit for damages against any person who, acting under color of state law, deprives another individual of any rights, privileges or immunities secured by the United States Constitution or federal law," and that *Bivens* held that a parallel right exists against federal officials). "A *Bivens* claim can be maintained only against individual federal officers, not against a federal entity." *Albert v. Yost*, 431 F. App'x 76, 81 (3d Cir. 2011) (per curiam) (citing *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994)). In this case, plaintiff is attempting to bring his claims against SIS as a federal entity, as opposed to those individuals within the SIS. This is an improper attempt to bring a *Bivens* claim against this federal entity.

Nevertheless, plaintiff argues that the determination of whether plaintiff can make a case against SIS should not be made at this time as plaintiff needs discovery so that he can potentially amend his complaint. While discovery could potentially lead plaintiff to individuals within SIS who could be liable, this does not change the result that the SIS, as an entity as opposed to an

individual person, is not a proper defendant in this action as it is not a "person" for purposes of bringing a *Bivens* claim.[5]  Accordingly, the SIS will be dismissed as a defendant from this action with prejudice due to plaintiff's failure to state a claim upon which relief may be granted.

## V. CONCLUSION

For the foregoing reasons, plaintiff's motion for an extension of time to file his answer and his motion to withdraw his January 21, 2014 filing are granted.  Plaintiff's motion for sanctions or in the alternative to strike defendants' reply to their motion for summary judgment is denied.  Defendants' motion for summary judgment or alternatively, to dismiss for failure to state a claim upon which relief may be granted is granted in part.  Plaintiff's claims against SIS shall be dismissed with prejudice.  An appropriate order will be entered.

DATED:  September 16, 2014

s/Robert B. Kugler  
ROBERT B. KUGLER  
United States District Judge

---

[5] To the extent that plaintiff may be seeking to raise claims against unnamed individual defendants within the SIS, the proper procedure is to use fictitious names in a proposed amended complaint and then amend his complaint once those individual names are discovered, as opposed to naming a federal entity itself in the first instance.